122 So.2d 526

Wimp **LANG**

v.

**STATE.**

**8 Div. 514.**

Court of Appeals of Alabama.

Dec. 15, 1959.

Rehearing Denied Jan. 12, 1960.

Affirmed on Mandate Aug. 16, 1960.

Powell & Powell, Decatur, for appellant.

MacDonald Gallion, Atty. Gen., and John F. Proctor, Asst. Atty. Gen., for the State.

CATES, Judge.

▮ The facts in this case are adequately stated in the dissenting opinion of the Presiding Judge to whom this case was originally assigned. The court is unanimous as to the correctness of his disposition of the second point, and all that he has thereabout so ably discussed is expressly adopted.

Where we have parted ways is upon the construction of the trial judge's first order in this trial on a capital charge, i. e., carnal knowledge of a girl under twelve. Code 1940, T. 14, § 398.

Lang was arraigned November 26, 1958. His trial began December 3, 1958, and the transcript shows that a venire of 100 men "was duly qualified by the court and attorneys in groups of twelve, and no exception was taken thereto."

Before a jury was impaneled, the court declared a recess for lunch. Thereafter the record runs:

"A jury of twelve men being thereupon selected, same were duly sworn. The witnesses are brought around and sworn.

"Mr. Johnson: We would like to suggest to the court the invocation of the provisions of Title 168 of the Constitution of the State of Alabama in this matter for the trial of this case.

"Court: Gentlemen, all the other parties, witnesses and attorneys in the other cases, together with the other jurors may go now until 1:30 tomorrow. You can go now. All the other parties, witnesses and jurors.

"Mr. Johnson: It is Section 169, for the sake of the record.

"Court: All the other persons in the audience may be excused until 1:30 tomorrow. You may go now. All other persons in the audience may go now. (To colored: You up there. You are not witnesses. You can go.

"Mr. Johnson reads the indictment."

Our Constitution, § 169, provides:

"In all prosecutions for rape and assault with intent to ravish, the court

may, in its discretion, exclude from the courtroom all persons, except such as may be necessary in the conduct of the trial."

The Supreme Court has construed § 169 narrowly so as not to extend it to kindred crimes such as statutory rape. Thus, in Hull v. State, 232 Ala. 281, 167 So. 553, 554, we find:

"This defendant was indicted and tried under section 5410 [now Code 1940, T. 14, § 398] for having 'carnal knowledge of any girl under twelve years of age.' It may be true that this may be a kindred offense with rape, but this court in the case of Toulet v. State, 100 Ala. 72, 14 So. 403, held that the offense here involved did not constitute rape and we must assume that the framers of the Constitution of 1901, when adopting section 169 had full knowledge with the holding in the Toulet case, supra, and did not intend thereby to include any offenses save 'rape and assault with intent to ravish.'

"Decency and propriety may suggest the same reason for excluding the crowd in trials of this character, but we feel foreclosed by the Toulet case, supra, from including this offense in section 169 of the Constitution."

■ The collision between public trial and restraining pruriency is resolved in favor of open courts except only in the named cases of rape and assault with intent to ravish. Nor may a public trial be waived. Wade v. State, 207 Ala. 1, 92 So. 101.

On the record before us, it is clear that (1) the solicitor, citing § 169, asked the trial judge to clear the courtroom; and, (2) without any intervening event or colloquy, the judge, addressing the spectators, said, "You may go now."

The reading of the indictment to the jury followed immediately after the judge's order to clear the courtroom.

If jurors and witnesses (brought in by process) had been the only ones present, we should find no error in the imperative overtone in the judge's announcement. But a reading of it, particularly, "All the other persons in the audience," convinces us that, upon the solicitor's motion, the judge thought the charge was rape rather than statutory rape.

The word "may" often means "must." [1] Also, it is a habit of judges, probably going back to the fiction of the King being present at the King's Bench, in dismissing persons in attendance to use the polite, "You may leave," or "You may go," instead of the blunt, "Get out," or the quaint "Begone." A nod of the head is enough to show finality, implying the sanction of a heave ho from the bailiff if the wish is not taken as a command.

Thus, from *"can; may"* in the Evans's A Dictionary of Contemporary American Usage, we excerpt:

" * * * *may* is also used to ask for or grant permission, as in *may I come in?* Some grammarians claim that *can* should never be used in a sentence of this kind, since *can* asks about what is physically possible and not about what is permissible. Actually, this question takes us out of the realm of language and into the intricacies of politeness. *Can* is often used in place of *may* to suggest that the decision is not merely a personal whim but something based on objective facts.

"In refusing permission, *you may not* is felt to be disagreeably personal and dictatorial and *you cannot* is almost universally preferred. * * * In granting permission may is still used

---

1. Nabors v. Nabors, 2 Port. 162; Hill v. Barge, 12 Ala. 687; Ex parte Cincinnati, S. & M. Ry. Co., 78 Ala. 258; Blair v. Murphree, 81 Ala. 454, 2 So. 18; Graham v. City of Tuscumbia, 146 Ala. 449, 42 So. 400; Johnson v. Riddle & Ellis, 204 Ala. 408, 85 So. 701; Cooper v. State, ex rel., 226 Ala. 288, 147 So. 432; Fuller v. State, 31 Ala.App. 324, 16 So.2d 428.

occasionally, as in you may keep it till Friday. But most people now feel that it is more courteous, less autocratic, to say you can keep it till Friday. * * *"

■ Ordinarily a dismissal of a person at the bar returns the attendant to the status of an onlooker. So that, while he may not, unless an officer of the court, remain within the bar, he may stay in the general area of the room. Here, however, the court was addressing, *"All the other persons in the audience,"* i. e., all except witnesses and jurors in the instant trial. (Italics supplied.)

Liberty, though regained by violent conflict, is usually lost not by avulsion but rather through erosion. In the name of vindication many institutions and practices when employed by fair minded men have helped society.

So it was with the Court of Star Chamber under Elizabeth I. But under that "wisest fool in Christendom," James I, this court became an infamous engine which Coke finally saw as one capable of destroying freedom. Little wonder the English Civil War ensued.

Again, too, when George III turned his back on the common law, it was no accident the American states and their general government insisted on written Bills of Rights. But a Bill of Rights would be but the hollow echo of a pamphleteer's slogan were it not undergirded by such pragmatic pillars as the assurances of habeas corpus and of public trial.

Perhaps Lang, if tried again, will be convicted once more. He even runs the risk of being sentenced to die.

Be that as it may, our oath is one to uphold the purity of the faith in the Law. Thus, we should probably affirm the trial court if we were to apply the harmless error doctrine, as some courts do, so as to avoid a reversal where we decide that no reasonable jury could, on a consideration of the evidence, come to a different verdict.

■ However, particularly in capital cases (e. g., Neal v. State, 257 Ala. 496, 59 So.2d 797), speculation of what might be is ordinarily subordinated to substantial rights. Moreover, the Alabama harmless error doctrine is expressed that the appellate court should affirm (1) when it is "satisfied no injury resulted," or (2) unless the error "has probably injuriously affected substantial rights." Code 1940, T. 15, § 389, second sentence, and Supreme Court Rule 45, Code 1940, Tit. 7 Appendix.

The meaning of the judge's order here responds to the petition of the solicitor's motion and was presumably obeyed. To say that the judge merely meant the spectators were at liberty to go is wholly unrealistic and a misinterpretation of his words. Certainly those persons not under restraint of legal process were already free to go without a "by your leave, sir" from the judge.

We cannot presume regularity in the face of the environment of the court's order.

In the circumstances of (1) the solicitor's moving the court to clear the courtroom under § 169 of the Constitution, (2) the indictment not having been read, and (3) the judge's all embracing words, "All the other persons in the audience," (twice spoken) "You may go now," "You are not witnesses. You can go," it seems to us, with all deference to our esteemed Presiding Judge that the inescapable conclusion of a rational mind reading the record in context must be that the trial judge thought the charge was for rape and, therefore, mistakenly closed the courtroom. If he closed it then the presumption of continuity would tell us it was closed all during the trial.

Accordingly, the judgment below should be reversed and the cause there remanded for a new trial.

Reversed and remanded.

HARWOOD, Presiding Judge (dissenting in part).

This appellant has been adjudged guilty of carnally knowing a girl under 12 years of age, and sentenced to a term of 10 years imprisonment in the penitentiary.

The appellant at the time of the alleged offense was 17 years of age, and the victim was 5 years of age.

We have carefully read the evidence presented by the State. It is ample in its tendencies to support the verdict and judgment if believed by the jury to the required degree. We refrain from setting forth the sordid details.

The evidence presented by the defense, including the testimony of the appellant was directed toward establishing an alibi.

The contradiction presented by the evidence offered by the State and that offered by the defense raised a question of fact solely within the province of the jury to resolve.

After our study of this record we think there are only two points that require discussion.

The first point results from the following occurrence at the opening of the trial.

"A jury of twelve men being thereupon selected, same were duly sworn.

"The witnesses are brought around and sworn.

"Mr. Johnson: We would like to suggest to the court the invocation of the provisions of Title 168 of the Constitution of the State of Alabama in this matter for the trial of this case.

"Court: Gentlemen, all the other parties, witnesses and attorneys in the other cases, together with the other jurors, may go now until 1:30 tomorrow. You can go now. All the other parties, witnesses and jurors.

"Mr. Johnson: It is Section 169, for the sake of the record.

"Court: All the other persons in the audience may be excused until 1:30 tomorrow. You may go now. All other persons in the audience may go now.

(To colored: You up there. You are not witnesses. You can go.

"Mr. Johnson reads the indictment."

Counsel for appellant contends that the above action deprived this appellant of a public trial guaranteed by Sec. 6, Art. 1 of the Constitution of Alabama of 1901.

In this connection it might be well to note that Sec. 169 of our Constitution, supra, provides that in all prosecution for rape and assault with intent to rape the court may, in its discretion, exclude from the courtroom all persons, except as may be necessary for the conduct of the trial.

However, it has been held that Sec. 169 must be limited solely to prosecutions for rape and assault with intent to rape, and cannot be extended to other offenses even though kindred in the aspect of sexuality. Hull v. State, 232 Ala. 281, 167 So. 553 (carnal knowledge); Stewart v. State, 18 Ala.App. 622, 93 So. 274 (seduction); Wade v. State, 207 Ala. 1, 92 So. 101 (mayhem by castration).

This being a prosecution for carnal knowledge, and not for rape, or assault with intent to rape, Sec. 169 can have no influence in our consideration of the point now before us.

We cannot adhere to counsel's position or the views of a majority of this court, that this judgment should be reversed because of the matters shown in the portion of the record excerpted above.

This for the reason that a reading of the court's words shows that they were couched in terms of permission and not in terms of command or order. The language of the court was: "You can go now," "All other persons in the audience may be excused," or "May go now," or "You can go."

While the appellant did not except to the court's action in the premises, it has been held that the right to a public trial is a matter that cannot be waived, it being "Like unto the right to trial by a jury in felony cases." Wade v. State, 207 Ala. 1, 92 So. 101, 104 (on rehearing).

However, this record is completely silent as to whether, after the statement above by the trial judge, any person left the court-room, or that any person seeking admission thereto had been kept away.

While a motion for a new trial was filed there is no transcription of any testimony that may have been presented at the hearing on the motion, if any evidence was presented. No light is therefore shed upon the situation by the new trial proceedings.

In the absence of a satisfactory showing to the contrary, the law presumes the regularity of the proceedings in a court of record. There is therefore a presumption of law that the appellant was given a public trial by the court below. This presumption has not been overcome by any showing in this record rising to the required probative degree. No error justifying our reversing this judgment arose from the instance above discussed.

The second point we wish to discuss arises from the direct examination of Mrs. Virginia Moran, the mother of the alleged victim Rebecca Moran.

Mrs. Moran testified that for approximately ten years her family had lived as neighbors to the appellant's family, the houses being a distance of about a city block apart in Hillsboro.

On the day in question she had gone to the Lang residence to see Mrs. Lang, and had taken her two small daughters, Rebecca and Barbara, with her. Mrs. Moran arrived at the Lang residence at about 5:00 P.M. She saw the appellant in the hall of the Lang home, and proceeded on out to the garden where Mrs. Lang was. The garden was close behind the house. On the way the smallest daughter, Barbara, stopped off in the yard to play with a tricycle. After talking to Mrs. Lang a moment or so, Mrs. Moran sent Rebecca to get Barbara. Neither daughter returning, Mrs. Moran walked toward the house calling for Rebecca. As she neared the house, Rebecca came out and was whining at the time. Not over ten minutes had elapsed from the time she sent Rebecca to hunt for Barbara until she saw Rebecca coming out of the house.

At this time Rebecca said to the witness, "Mother, I want to tell you what he·done to me."

The solicitor then asked who she was talking about, and Mrs. Moran said she was talking about "Wimp," and that Rebecca had said, "I want to tell you what 'Wimp' did." On motion of the appellant the court excluded that part of the answer as to who Rebecca was talking about.

The record then shows the following during the examination by the solicitor:

"Q. But I believe you tell this jury that she actually said to you, 'I want to tell you what Wimp did to me.' A. Yes, Sir."

Thereafter, during the direct examination of Mrs. Moran, quite a colloquy developed between respective counsel and the court relative to the admissibility of evidence of complaints by a prosecutrix in prosecutions for rape and allied offenses. During this colloquy the court asked Mrs Moran, "Did she at any time that afternoon tell you this defendant had done something to her?" to which the witness answered "Yes." Counsel for appellant then interposed an objection to the question, and further colloquy then ensued.

The court had the jury sent out, and further discussion took place and the jury was then returned to the box.

The record then shows the following:

"Mr. M. Powell: I would like to make a motion to exclude all the testimony of Mrs. Moran with reference to the statements made by her daughter to her about what the defendant had done to her.

"Court: The motion is granted as to all of the statements that she made

which involved naming of the person, save and except the statement made, if it was made, the evidence of it, that as she came out the door she made complaint and what she said at that time because that, under the law, is a part of the res gestae.

"Mr. M. Powell: We except to the overruling of that portion of our motion, and in view of the evidence that has been permitted to go in with reference to this statement, we respectfully ask the court for a mistrial at this time.

"Court: And that is overruled.

"Mr. M. Powell: We think it is prejudicial and we except."

The length of the colloquy and the interposition of objections, etc., some of which were clearly late, presents a confused situation. However, after careful reading it is clear that the court, in its final ruling, admitted in evidence only the statement of the prosecutrix as she emerged from the house.

It is clear under the doctrines of our cases that in prosecution for sexual offenses the State, in its main case, may not show by the examination either of the prosecutrix, or a third party, anything more than a bare complaint made by the prosecutrix, and may not show or prove initially any details of the complaint, including the identity of the accused. Oakley v. State, 135 Ala. 15, 33 So. 23; Posey v. State, 143 Ala. 54, 38 So. 1019; Bray v. State, 131 Ala. 46, 31 So. 107; Gaines v. State, 167 Ala. 70, 52 So. 643; Bradham v. State, 27 Ala.App. 225, 170 So. 222; Newton v. State, 32 Ala.App. 640, 29 So.2d 353; Allford v. State, 31 Ala.App. 62, 12 So.2d 404; Allford v. State, 244 Ala. 148, 12 So.2d 407; Thompson v. State, 27 Ala.App. 104, 166 So. 440; Green v. State, 19 Ala.App. 239, 96 So. 651; Curry v. State, 23 Ala.App. 140, 122 So. 303; Lee v. State, 246 Ala. 69, 18 So.2d 706.

However, there is a clear exception to the above doctrine, in that if the complaint by a prosecuting witness is a part of the res gestae of the offense, then the details and particulars of the complaint may be received in evidence. Barnett v. State, 83 Ala. 40, 3 So. 612; Nelson v. State, 130 Ala. 83, 30 So. 728; Starks v. State, 137 Ala. 9, 34 So. 687; White v. State, 237 Ala. 610, 188 So. 388; Fowler v. State, 8 Ala. App. 168, 63 So. 40; Daniell v. State, 37 Ala.App. 559, 73 So.2d 370.

Innumerable decisions defining "res gestae" may be found annotated in 6 Ala.Dig., Criminal Law, ⊜363. The clearest discussion of the meaning of this term, to the writer, is to be found in Bessierre v. Alabama City G. & A. R. Co., 179 Ala. 317, 60 So. 82, 86, wherein the elder Mayfield, J., elucidated upon the meaning of the term as follows:

"We confess that it is difficult, if not·impossible, to define the principle of res gestae. Like many other principles of the law, it is easier to say or define what it is not than what it is; hence negative definitions are probably the most serviceable and the most accurate in determining in a particular case whether a given fact or incident is a part of the res gestae so as to render it admissible in evidence as such testimony. The subject has been so often discussed by this court, and at such length, that we could not hope to better define the term than has already been done by this court. In Hawk's Case [Alabama Great Southern R. Co. v. Hawk], 72 Ala. 112, 117, 118, 47 Am.Rep. 403, it is said: 'It is difficult, if not impossible, to accurately define the principle of res gestae as it is often called. It is commonly said to have reference to such circumstances and declarations as are contemporaneous with the main fact under consideration, and so closely connected with it as to illustrate its character.—1 Greenl.Ev. § 108. What lapse of time is embraced in the word "contemporaneous" is often a question

of difficulty. Perfect coincidence of time between the declaration and the main fact is not, of course, required. It is enough that the two are substantially contemporaneous. They need not be literally so. The declaration must, however, be so proximate in point of time as to grow out of, elucidate, and explain the character and quality of the main fact, and must be so closely connected with it as to virtually constitute but one entire transaction, and to receive support and credit from the principal act sought to be thus elucidated and explained. The evidence offered must not have the earmarks of a device, or afterthought, nor be merely narrative of a transaction which is really and substantially past.' "

 In considering whether the evidence is a part of the main event, each case must be determined upon its own particular facts.

In the present case Rebecca was out of her mother's presence for not more than ten minutes. During this interval, if the conclusions to be drawn from the State's evidence be accepted to the degree required, she walked from the garden to the house, was criminally assaulted by this appellant, and upon reappearing in response to her mother's calls, came out of the house whining and immediately stated, "Mother, I want to tell you what Wimp did." Examination of the child by her mother after returning to the Moran home revealed physical injuries to the child's private parts, which injuries were observed upon medical examination the next day.

Under all of the circumstances, Rebecca being five years of age at the time, it cannot rationally be said that Rebecca's statement, upon emerging from the house, was the result of device, or retrospection, but on the other hand must be considered as instinctive and spontaneous, and produced by the act.

Certainly the statement tended to shed light upon and illustrate the main event.

We are therefore clear to .the conclusion that under the facts of this case, and the legal principles applicable thereto, the court below properly admitted the questioned statements of the prosecutrix as part of the res gestae.

Upon examination of this record I am of the opinion that it is free of error probably injurious to any substantial right of the appellant, and the judgment is due to be affirmed. I therefore respectfully dissent from the conclusions of my associates.

CATES, Judge.

Affirmed on authority of Lang v. State, 8 Div. 25, 122 So.2d 533. .