298 So.2d 642

**Henry Ford WINSTEAD**

v.

**STATE.**

**6 Div. 547.**

Court of Criminal Appeals of Alabama.

April 9, 1974.

Rehearing Denied May 7, 1974.

William J. Baxley, Atty. Gen. and Don C. Dickert, Sp. Asst. Atty. Gen., for the State.

Josh Mullins, Jr., Larry Halcomb, G. William Noble, Birmingham, for appellant.

TYSON, Judge.

The Grand Jury of Jefferson County, Alabama, at its April 1972 Term, did return three indictments against the appellant, Henry Ford Winstead. The indictment in Case No. 25056 charged the appellant with assault with intent to murder one Howard Vinson. The indictment in Case No. 25057 charged the appellant with the first degree murder of one Allen Samuel Vinson. The indictment in Case No. 25058 charged the appellant with the first degree murder of Bobby Ray Bice.

Prior to trial the three cases were consolidated for trial by agreement between the State of Alabama, the three defense attorneys and the appellant. The Jury returned three separate verdicts and found the appellant guilty of assault with intent to murder in Case No. 25056, and the trial court in its judgment fixed punishment at twenty years imprisonment. The Jury found the appellant guilty of murder in the second degree in Case No. 25057 and fixed punishment at twenty years imprisonment.

The trial court entered its judgment, setting sentence accordingly. The Jury also found the appellant guilty of murder in the second degree in Case No. 25058 and fixed punishment at twenty years imprisonment. The trial court then entered its judgment, setting punishment at twenty years imprisonment in this case. The appellant's motion for new trial was overruled.

The two homicides and the assault all arose out of an incident which occurred on February 18, 1972, at a place known as the "Tiki Lounge," formerly known as the "Hole in the Wall," which was located at 1924 Vanderbilt Road in the Tarrant City section of Jefferson County, Alabama.

According to John Stallings, five men, Allen Vinson and his brother, Howard Vinson, Virgil Bice and his son, Bobby Ray Bice, together with Stallings, entered the "Tiki Lounge" between 6:00 and 6:30 on the evening in question. They were there shooting pool and drinking beer for several hours when an argument began between Howard Vinson and one George Evans, the owner-bartender. Stallings stated that he took a swing at Evans, and that Evans ducked and went behind the bar, stating that he was going to get his gun. Stallings stated that Bobby Bice and Henry Winstead, the appellant, began fighting, and he saw Bice hit the appellant with his fist; that people, some twenty-five to thirty in number, within the lounge began to leave. At this point, according to testimony of several witnesses, Evans took his pistol and fired a shot into the ceiling and told these five men, Stallings, the two Bices and the two Vinsons, to leave.

Stallings stated that none of the five men were armed with weapons of any kind. The men started outside when Bobby Bice returned to the lounge and, according to the appellant, Bice was running toward him with something in his hand. At this point the appellant grabbed the pistol from the pocket of the bartender, Evans, and fired once at Bice. Bice fell, and two of his group then returned and carried him outside.

The appellant testified that he sat at the bar for a few minutes and then went toward the front door of the lounge. He stated that he could see Allen Vinson in a parked car, and he appeared to be leaning down; that he, Winstead, "just shot into the window to get them to stop." Allen Vinson was found dead behind the steering wheel, and Howard Vinson was wounded with two bullets in his stomach.

In his own testimony, the appellant stated that he had been struck across the face with a pool cue and was rendered unconscious for a time. As he was coming to and wiping the blood from his face, he saw Bobby Bice coming toward him, and at that point he grabbed the pistol from Evans' pocket and fired. He stated that, following the affray, he, the appellant, was taken to his home and there left the pistol in question before being taken to the hospital for treatment. Subsequently, his wife turned the pistol over to two police detectives.

I

The appellant contends that the trial court erred in discharging the juror, Mrs. Stalcup, and appointing in her place the alternate juror, Mrs. Hodges, just before the Jury retired for deliberation, without the consent of the appellant. From the record:

"THE COURT: Ladies and gentlemen, before I have you retire, let me suggest to you that the first order of business when you go back to the jury room should be to select one of your number as foreman and let that person conduct the proceedings for you.

"Before I send you back, I know it has been a trying time for each and every one of you. You have been quite uncomfortable. I know you haven't rested well, so let me go down the line.

"Mrs. Nash, are you mentally and physically able to continue this case?

"THE JUROR: Yes, sir.

. . . . . .

"THE COURT: Mrs. Stalcup, are you mentally and physically able to continue with this case?

"THE JUROR: Yes, but I don't think so emotionally.

"THE COURT: I can't hear you, please, ma'am.

"THE JUROR: I said yes, but I don't think so emotionally.

"THE COURT: Are you having a problem, please, ma'am?

"THE JUROR: Yes.

"THE COURT: Is it affecting you. emotionally, mentally and physically now? She's nodding her head in the affirmative. This has to go in the record, Mrs. Stalcup. Do you feel you cannot continue with the case? She is nodding in the affirmative. I will come back to you in just a minute.

"Mrs. Poe, are you mentally and physically able to continue with this case?

"THE JUROR: Yes, sir.

.    .    .    .    .    .

"THE COURT: Mrs. Stalcup, we have to be very careful about this. Do you feel that you are becoming physically ill at this time due to the emotional and mental strain upon you?

"THE JUROR: I think I will be.

"THE COURT: You will be?

"THE JUROR: Yes, sir.

"THE COURT: In a short time, she said. Do you feel—and you are the only one who knows, ma'am. I must go over this. I'm not trying to pick on you. I'm not trying to embarrass you but I have to be very careful.

"Do you feel if you commence deliberation in each one of these cases you could not continue with you deliberation due to emotional—she said right, she could not.

"(Thereupon, there ensued an off-the-record discussion at the Bench, inaudible

to the court reporter, following which the following proceedings were had and done:)

"THE COURT: Wait a minute. I haven't gotten to that point. Gentlemen, in view of the statements made by Mrs. Stalcup that she is not physically, mentally or emotionally able to continue with this case and, more specifically, that she cannot deliberate on these cases due to her physical, mental and emotional problems, is there any objection in moving Mrs. Hodges, who's the alternate, into the place of Mrs. Stalcup?

"MR. RUSSELL: No objection for the State, Your Honor.

"MR. NOBLE: I wonder if we may approach the Bench, Your Honor?

"(Whereupon, there ensued an off-the-record discussion, inaudible to the court reporter.)"

.    .    .    .    .    .

Volume 14, Section 724, Code of Alabama 1940, Appendix (applicable to counties with a population of more than 400,000), is as follows:

"*When alternate juror takes place of principal juror.*—The court may order an alternate juror to take the place of a principal juror only when a principal juror, prior to the retirement of the jury to consider its verdict, is excused by the court, in the exercise of its sound discretion, from further service by reason of some mental or physical ailment in such principal juror or his confrontation with some emergency, rendering him unable to perform his duties satisfactorily."

Counsel submits that the trial court abused its discretion in excusing Mrs. Stalcup and replacing her with Mrs. Hodges, the alternate juror. We do not agree.

It is clear from reading the record, where the trial judge was interrogating Mrs. Stalcup, that she was experiencing some type of illness, and was not malingering. Under this situation, we cannot say

that the trial judge abused his discretion in excusing the principal juror, Mrs. Stalcup, and replacing her with the alternate juror, Mrs. Hodges. Such action was proper under the above cited statute. See also Annotation, 84 A.L.R.2d 1288, at 1294; and Yarbrough v. State, 105 Ala. 43, 16 So. 758.

## II

Following the trial court's oral charge, the following transpired:

"MR. MULLINS: I want to show that our exception came at the proper time and place and the Court—

"THE COURT: The exception shows it was timely filed with the Court in the presence of the jury by the defense and the exception is as follows to the Court's oral charge: 'We take exception to the failure of the Court to charge on self-defense in the homicide case and cases and request the Court to instruct the jury on self-defense in each homicide case and in the same words as the Court used in charging on self-defense in the assault with intent to murder case.'

"MR. MULLINS: That is our exception we wish to make, Your Honor."

■ The appellant contends that the trial court erred in refusing to instruct the jury as to the appellant's theory of self-defense in the two homicide cases.

In Smith v. State, 262 Ala. 584, 80 So.2d 307, the Supreme Court of Alabama, speaking through Mr. Justice Stakely, indicated:

". . . Under the factual theory of the defense the defendant was not under the duty to retreat and exception to the oral charge was made because of the failure of the court to charge on the law as it is claimed to relate to the theory of the defense.

"In the instant case it is sufficient to say that when the oral charge is not as full and instructive as defendant's counsel desired his remedy is to request written charges which elucidate and explain the defendant's theory of the case . . . . "

We have carefully examined the written charges and find that appellant's counsel failed to tender a written instruction covering the alleged omitted principle. Matters of this kind cannot be raised by mere exception to the oral charge. Davis v. State, 246 Ala. 101, 19 So.2d 358; Lovejoy v. State, 33 Ala.App. 414, 34 So.2d 692. Rather, counsel must submit written instructions covering the omitted principle in order to preserve the alleged error for appellate review. Waller v. State, 35 Ala. App. 511, 49 So.2d 232, and authorities therein cited.

We have carefully examined this entire record, as is our duty under Title 15, Section 389, Code of Alabama 1940, including all rulings of the trial court, and find same to be free from error.

The three judgments of the trial court are therefore due to be and the same are hereby

Affirmed.

All the Judges concur.