Child molestation; two years.
The indictment charged that Joseph Ciervo:
 ". . . did take or attempt to take immoral, improper, or indecent liberties with . . . a female child under 16 years of age, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires, either of the said JOSEPH CIERVO or of such child, or of both the said JOSEPH CIERVO and such child by kissing her on the cheek and fondling her private parts, or did commit, or attempt to commit a lewd or lascivious act upon or with the body, or a part or member of the body of such child, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires, either of the said JOSEPH CIERVO *Page 396 
or of such child, or both the said JOSEPH CIERVO and such child by kissing her on the cheek and fondling her private parts, . . . ."
The appellant pled not guilty and not guilty by reason of insanity, and on November 22, 1974, he was tried and convicted. A motion for a new trial was denied on January 8, 1976, and defendant's request for probation was subsequently denied on February 9, 1976.
The prosecutrix, in this case, was a twelve-year-old female child in the seventh grade of George Washington Junior High School, and the defendant was her "step-uncle by marriage."
The prosecutrix's parents were divorced and she lived with her mother. On a Friday night in March of 1974, she went to her uncle's to spend the night. When she and her four-year-old sister arrived, the defendant, his wife Juanita, and her cousins, Susan and Kenneth Wade Bowden, were present.
About 6:30 that evening, the defendant and the prosecutrix's aunt went to a baseball game and she went to Kenneth's room to watch television while her little sister watched the television in the den with Susan. The prosecutrix stated that the door to Kenneth's room was closed while they watched the television and that she and Kenneth laid in bed and kissed and hugged.
About 12:30 A.M., the defendant and his wife came into the house through the back door. At that point, the prosecutrix left Kenneth's room and went to the den and picked up her little sister. She carried her to Susan's bedroom and placed her in bed. It was about ten minutes later when the defendant came to the doorway and said he was going to kiss her goodnight and prosecutrix responded, "Okay." At that point he came over, kissed her on the cheek, and then reached down and raised her night gown to her waist. He then put his hand down into her panties and touched her private parts. She explained that her "private parts" were: ". . . in between — it's in between my legs and my skin." The prosecutrix moved his hand and said, "`What do you think you're doing?'" At that point the appellant laughed and left the room.
In about five minutes appellant returned and gave the prosecutrix a dollar and told her to buy something for her little sister and herself the next day. The prosecutrix said that after the appellant left she went in and told Kenneth what had happened. Even though prosecutrix saw her mother on Saturday, she did not tell her what happened until Sunday. She said she did not tell her mother or aunt because she was afraid, and that the next day after breakfast she went to her grandmother's.
During cross-examination the prosecutrix stated that she was dressed during the time she was in Kenneth Bowden's room and denied engaging in sexual intercourse with him. She explained:
 "When y'all said intercourse, I thought it just meant hugging and kissing and stuff like that."
Further she denied calling defendant's house the next day and inquiring about spending Saturday night.
The State concluded its case at the end of the prosecutrix's testimony and the defense made a motion to exclude the State's evidence. Counsel alleged that the State had failed to prove the charges in the indictment and requested that a directed verdict be given in the defendant's favor. He argued that the testimony presented merely showed an assault and battery and there was no evidence of any intent of arousing or gratifying sexual desires.
Kenneth Wade Bowden was fifteen years old and the stepson of the defendant. He testified that his mother and step-father had been married for about a year and a half and that they lived at 6 Kiwanis Street, Montgomery, Alabama. He recalled the incident when the prosecutrix claimed that she was molested by his step-father, but did not recall the exact time when his mother and step-father left for the game. Bowden stated it was about 10:30 P.M. when the prosecutrix came to his room to watch television. The door to his room was closed during that time and the prosecutrix *Page 397 
took off her clothes. Bowden did not state what transpired from the time the prosecutrix came into his room until the time they heard his parents come in the back door. He recalled that she stayed just long enough to dress and then went into Susan's room.
According to Bowden, the prosecutrix's sister was already in bed when he and prosecutrix went into Susan's bedroom. He then went through Susan's room into the kitchen where his mother and step-father were. At that time he saw the defendant go to the bathroom and not to the room where the prosecutrix was sleeping. Further, after twenty or twenty-five seconds, appellant left the bathroom, and prosecutrix came to Bowden's room. She got in bed with him and told him that Ciervo had given her a dollar. Bowden testified that she did not make any statement to him about appellant bothering or molesting her and he denied making the statement that it: ". . . was just like Joe to do something like that." Bowden said that on her second visit to his room the prosecutrix stayed until the television went off at 1:30 A.M. and recalled that she telephoned his home on Saturday afternoon.
During cross-examination Bowden denied telling anyone that the prosecutrix came to his room and said that appellant had put his hand between her legs and on her private parts.
Susan Bowden was the twenty-year-old retarded stepdaughter of the defendant. She recalled that her mother and step-father had gone to a baseball game about 6 o'clock on the night in question. According to Susan the prosecutrix's sister was asleep in her room and Kenneth Bowden and the prosecutrix were with her in the living room. Later Kenneth and the prosecutrix went into his room and closed the door. When Susan's step-father and mother returned, she was watching television in the living room. The prosecutrix was still in Kenneth's room when she went to bed at 12:30 A.M. About five minutes later, the prosecutrix came into Susan's room and went to bed. She was wearing a gown and did not go right to sleep.
According to Susan, the prosecutrix became angry at appellant because he would not allow her to spend Saturday night at the house with Kenneth. During cross-examination, Susan admitted that she had talked to her mother about the incident but denied going over what she was to say.
Joseph Ciervo testified that he was a truck driver and lived with his wife, Juanita and children at 6 Kiwanis Street in Montgomery. About 6:00 P.M. on the night in question, he and his wife went to a baseball game and returned about midnight. He saw Susan in the living room but did not see Kenneth or the prosecutrix. After Ciervo walked through the house he returned to the kitchen where he drank some coffee with his wife. He recalled they remained in the kitchen for fifteen or twenty minutes before his wife went to their bedroom and he went to the bathroom.
Appellant explained that to get to the bathroom, one had to go through Susan's room. He recalled that when he went through her room, he did not see the prosecutrix but when he returned from the bathroom, she was there in bed.
Ciervo stated that about the time he stepped into the bedroom, prosecutrix said: "`Are you going to kiss me goodnight?'" and he responded: "`Yes.'" At that point he went over to the prosecutrix, kissed her on the cheek and after grabbing her stomach said: "Okay Fatty." Appellant said he then returned to his bedroom and went to bed.
Ciervo denied putting his hands down into prosecutrix's panties but admitted giving her a dollar and telling her: ". . . to buy a Coke for her and some candy for her and Diane [her sister] and Susie." [Bracketed material added.] He also admitted that on the night in question he and his wife stopped at the Elk's Club and drank some beer. Appellant stated that the prosecutrix left the next day at 10:30 or 11:00 A.M. *Page 398 
Lena N. Taylor was called as a rebuttal witness by the State. She testified that she was prosecutrix's grandmother and that the defendant was her son-in-law. According to Taylor, immediately after the preliminary hearing her grandson, Kenneth Wade Bowden, talked to her about the case.
At the completion of Mrs. Taylor's testimony both sides rested.
 I
It is contended that the trial court committed reversible error in permitting the victim to testify regarding the substance of her complaint to Kenneth Bowden.
Generally, the fact that a complaint was made is admissible in a prosecution for a sexual offense, but details of the complaint cannot be shown. Oakley v. State, 135 Ala. 15,33 So. 23.
An exception exists to this rule where the complaint is part of the res gestae. Daniell v. State, 37 Ala. App. 559,73 So.2d 370; White v. State, 237 Ala. 610, 188 So. 388; Lang v. State,40 Ala. App. 705, 122 So.2d 526. In order for the complaint to come within the res gestae, it is not necessary that it be contemporaneous in point of time with the sexual offense. If it springs from the sexual offense, is voluntary and spontaneous, and is made at a time so near the alleged act as to preclude the idea of deliberate design, it may be regarded as contemporaneous and admissible. Lang, supra.
In the present case, the prosecutrix testified that after appellant committed the alleged offense, he laughed and left the room. She recalled he came back in about five minutes, gave her a dollar and said: "Here, buy y'all something tomorrow," then left the room. At that point the prosecutrix said she got up and went into her cousin's room and told him what had happened.
Under this testimony by the prosecutrix, it appears that the alleged sexual offense and the giving of the money was one continuous transaction and the complaint sprang from it. Further the declaration was so closely connected with the incident as to preclude the idea that it was by design.
In view of the facts in this particular case, the opinion of this Court is that the trial judge was correct in holding that the complaint was a part of the res gestae.
 II
The appellant contends that the trial court committed reversible error when it permitted the State to use prior felony convictions for impeachment without an in camera showing that the defendant had an attorney at the time of those convictions. Counsel maintains that when prior convictions are used for impeachment purposes and the record that the State relies on to show the conviction does not affirmatively show that the defendant was represented by counsel at the time of such convictions, then a presumption exists that the defendant was denied his constitutional right to counsel.
In support of this contention, the appellant cites Burgett v.Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319. In that case the petitioner was convicted of "`assault with malice aforethought with intent to murder; repetition of offense.'" The indictment presented not only the assault with intent to murder charge but alleged four previous felony convictions in the remaining counts of the indictment. Pursuant to the Texas recidivist statute if the allegations were found to be true then the petitioner would have been subject to a sentence of life imprisonment upon the conviction of the assault with intent to murder offense. At the trial, the State offered in evidence a certified copy of one Tennessee conviction showing that the defendant was without counsel at the time and nothing to indicate that counsel had been waived. A second version of that conviction was offered but with no specific showing of counsel being present. The Supreme Court said that the certified records of the Tennessee conviction on their face raised a presumption that the petitioner was denied his right to counsel and therefore the conviction was void. *Page 399 
The court stated that admissions of prior criminal convictions which were constitutionally infirm under the standards ofGideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792,9 L.Ed.2d 799, are inherently prejudicial. The court went on to say that the instructions to the jury not to consider the prior convictions would not render their introduction harmless.
A distinction exists between Burgett v. Texas, supra, and the case presently before us. In Burgett, the prior convictions, even though they were excluded from the jury's consideration by instruction of the court, were not at the outset shown to be convictions where counsel was present. They were offered to show petitioner's guilt as a recidivist under the Texas statute. Under our facts the convictions were shown not to prove appellant's guilt but for the purpose of impeachment.
In our judgment, the Supreme Court in Burgett, supra, was holding the prior convictions presumptively void where no counsel was shown in attendance, if they were specifically usedfor the "guilt phase" of the trial.
The law in Alabama is clear that a prior conviction of a crime involving moral turpitude can be used to discredit a witness. T. 7, §§ 434, 435, Code of Alabama 1940, Recompiled 1958. Evidence of such prior convictions may be shown by the oral testimony of the witness himself, by the court record of such conviction or by a properly certified copy of the conviction. Thompson v. State, 100 Ala. 70, 14 So. 878; Wrightv. State, 38 Ala. App. 64, 79 So.2d 66. Proof of such convictions is for the purpose of impeachment and not to "support guilt or enhance punishment."
In our judgment, prior convictions involving moral turpitude can be used to impeach a witness' credibility without a showing that defendant at the time of conviction was represented by counsel.
In determining this issue we found, upon examination of the record, that counsel made an inquiry on this point at the time he made a motion to exclude the State's evidence. This was done outside the presence of the jury. From our reading of that portion of the record, we find a discussion of certain aspects of this question, but no objection or exception to any ruling by the court. Further, we did not find any objections to the State's questions to the appellant concerning his convictions. Under these facts, the question was not properly preserved and it cannot be raised for the first time on appeal. Greathouse v.State, 47 Ala. App. 71, 250 So.2d 609.
 III
Appellant alleges that the trial court committed reversible error when it did not permit Kenneth Wade Bowden to answer defense counsel's question: "How much of her clothes did she [prosecutrix] take — [off?]" [Bracketed material added.]
In Birmingham Electric Co. v. Glenn, 224 Ala. 620,141 So. 537, the Supreme Court of Alabama gave the following rule:
 "Drawing out on cross-examination testimony wholly immaterial did not entitle defendant to introduce testimony to contradict the witness. A witness cannot be thus impeached."
See also: Kilpatrick v. State, 51 Ala. App. 352, 285 So.2d 516.
Therefore even though the prosecutrix said she was dressed while in Bowden's room, the trial court was not in error when it would not allow defense counsel to use contradicting evidence for impeachment on this point.
 IV
Appellant insists the trial court committed reversible error when in response to his request for instructions, the court responded: "Disregard the comment by the Counsel for the Defendant, they don't want it answered." Appellant complains this is a comment on the evidence but in our search of the record we fail to find any support for this contention. The record reflects:
 "MR. THOMAS: [District Attorney] We'll withdraw the question, Your Honor, *Page 400 
if Mr. Walden doesn't want him to answer it.
 "MR. WALDEN: [Defense Counsel] I don't want him to answer it because it's not right —
 "THE COURT: Well, he withdrew the question, so you don't have to make a speech about it. Go ahead with —
 "MR. COLLIER: Well, Your Honor, I would ask that the Jury be instructed to disregard Mr. Thomas' comment that we don't want it answered.
 "THE COURT: All right. Disregard the comment by the Counsel for the Defendant, they don't want it answered." [Bracketed material added.]
 V
The appellant complains that the State was allowed to impeach the testimony of a defense witness without first establishing the proper predicate. Counsel argues that during the testimony of defense witness, Kenneth Wade Bowden, the State did not ask the proper predicate questions concerning time, place, persons present and the exact statement made. He maintains that the testimony of Lena Taylor, concerning specific statements made by this defense witness, went beyond the predicate laid by the State when it cross-examined him.
In determining this issue we examined the questions the prosecution asked Kenneth Wade Bowden and found the following:
* * * * * *
"CROSS-EXAMINATION: (Continued)
BY MR. JAMES EVANS: [District Attorney]
 "Q Wade, immediately after the preliminary hearing, did you have a conversation with your Grandmother concerning this case?
"A It depends on what she said.
 "Q Do you remember going down to the City, City Court?
"A (No response from the witness.)
 "MR. EVANS: I'll have to get the date to be precise, Your Honor.
"MR. COLLIER: It was June 1, 1974.
"MR. EVANS: All right.
"MR. WALDEN: Can't you have somebody to look it up?
"THE COURT: Go ahead.
"BY MR. JAMES EVANS: (Continuing)
 "Q Wade, on or about June 1st, 1974, on the night of June 1st, did you have a conversation with your Grandmother concerning this case?
"A Yeah, but I don't know what she said.
 "Q Did you talk to your Grandmother about this case, the defendant, and the charges that . . . [prosecutrix] said that the man did? Did you talk to her at all about it?
"A No, sir." [Bracketed material added.]
After considering all the circumstances, we believe the witness understood the place, the time and the person involved in the supposed contradiction. Under these facts, Kenneth Bowden should have known with reasonable certainty that he was being asked about a conversation he had with his grandmother on the night of the preliminary hearing. We believe that the predicate questions were sufficient and did not mislead the witness with reference to the conversation under inquiry.Phillips v. State, 11 Ala. App. 168, 65 So. 673; Burton v.State, 115 Ala. 1, 22 So. 585; Independent Life Ins. Co. v.Carroll, 222 Ala. 34, 130 So. 402; Sparks v. State, 261 Ala. 2,75 So.2d 103.
In so far as the content of the supposed contradictory statement is concerned we do not believe it is materially variant in meaning from the statement specified in the predicate question.
From the record, the question reads:
 "Q Did you talk to your Grandmother about this case, the defendant, and the charges that . . . [prosecutrix] said that the man did? Did you talk to her at all about it?
"A No, sir.
"Q You never had a conversation with her?
"A My Grandmother? *Page 401 
"Q Yes.
"A No, sir." [Bracketed material added.]
The testimony of Lena Taylor involving a contradictory statement by Kenneth Wade Bowden was:
 "Q Now, Mrs. Taylor, back immediately after the Preliminary Hearing down at City Court did you have occasion to have a conversation with Wade, Kenneth Wade, touching upon or concerning the prosecution in this case here today?
 "A He just said he was going to have to come to Court.
 "Q Did he make a statement to you at that time relating to you in his statement to you in his statement that . . . [prosecutrix] —
 "MR. COLLIER: [Defense Counsel] We are going to object. He's leading.
 "BY MR. JAMES EVANS: [District Attorney] (Continuing) I'll ask you whether or not Kenneth Wade Bowden told you —
 "MR. COLLIER: Your Honor, we are going to object again. The witness has just testified that the only conversation she had with him was that he was going to have to come to Court:
"MR. EVANS: No, sir —
"MR. WALDEN: He's going to impeach his own witness.
 "THE COURT: I don't think she said that, the only conversation —
"MR. EVANS: No, sir.
 "THE COURT: I don't think she said that was the only conversation.
 "MR. EVANS: No, sir. What's what Mr. Collier said. But that's not what she said.
 "THE COURT: I overrule the objection. "MR. EVANS: All right, sir.
"BY MR. EVANS: (Continuing)
 "Q I'll ask you whether or not Kenneth Wade Bowden, Mrs. Taylor, that's your grandson.
"A That's right.
 "Q Told you that . . . [prosecutrix], the little girl in this case, the victim, had told you, that the Defendant, Joe Civero [sic], placed his hand down in her private parts around her sexual organs?
 "MR. WALDEN: We are going to object to that question, Your Honor, it's not a proper predicate been [sic] laid and his question is not within the predicate that has been laid. It's an impeaching question, Your Honor. It's not the proper predicate —
"THE COURT: Yeah, I'll sustain it on that grounds.
"MR. EVANS: All right.
 "THE COURT: You can ask the same — where it was asked of the witness, it would be admissible.
"BY MR. JAMES EVANS: (Continuing)
 "Q Did Kenneth Wade Bowden tell you that . . . [prosecutrix] told him that the Defendant placed his hands on her vagina, her private parts —
"MR. COLLIER: We object.
"THE WITNESS: Yes.
 "MR. WALDEN: Don't answer his question, please Ma'am. There's an objection —
"THE WITNESS: Well, he asked me.
"THE COURT: But you have to wait until I rule on it.
* * * * * *
"BY MR. JAMES EVANS: (Continuing)
 "Q Mrs. Taylor, immediately after the Preliminary Hearing did you have a conversation with Kenneth Wade Bowden about the prosecution in this case?
"A He talked to me about it.
 "Q In that conversation, did Kenneth Wade Bowden tell you that . . . [prosecutrix], on the night this happened, came into his room and told him that the Defendant kissed her on the cheek, placed his hands around in the are [sic] of her vagina, between her legs, and gave her a dollar?
"MR. WALDEN: Wait just one minute —
"THE WITNESS: Yes.
 "MR. WALDEN: We object to that, Your Honor, on the grounds that this is not within the proper predicate, no proper predicate has been laid, and no predicate is laid for this question, and the *Page 402 
proper predicate is not laid for impeachment, because no time has been specified, no questions concerning who was present at this alleged conversation and exactly where it took place.
 "THE COURT: I think he's laid the proper predicate, so I'll allow it. I overrule the objection.
"BY MR. EVANS: (Continuing)
"Q Did Kenneth Wade tell you that?
"A Yes, he told me that." [Bracketed material added.]
This court in Duck v. State, 38 Ala. App. 652, 92 So.2d 55, stated:
 "Substantial similarity and not identity is required to exist between the predicate laid and the proof adduced by the impeaching witness' testimony." [Citations omitted.]
We do not believe there was a variance between the statement with which Kenneth Wade Bowden was confronted and that of his grandmother, the impeaching witness, great enough to cast doubt on whether the two witnesses were recalling the same statement.
 VI
Appellant asserts the trial court committed reversible error when it refused to instruct the jury on assault and battery as a lesser included offense and that they could affix a fine.
We have searched this record and find that appellant's counsel did not request any written instructions covering either the lesser included offense or the jury's prerogative to set a fine. These matters were first raised by counsel when he excepted to the court's oral charge:
 "MR. WALDEN: Your Honor, I wish you would charge the Jury that they could affix a fine. The law provides, I think, of a fine up to a thousand dollars and the Jury would be the one to fine him and put the fine on him. So, could we have an exception to the Court's Charge to it that there is only two verdicts that could be rendered as the Court gave them instructions regarding its Charge to the Jury and that they could fine this defendant.
 "THE COURT: I think that is up to the Court and not the Jury.
"MR. WALDEN: Could we have an exception to it?
"THE COURT: Yes, sir.
 "MR. WALDEN: Well, another thing. We would request a charge on assault and battery which I believe is a lesser included offense. Under that charge the Jury could fix a fine of whatever it is, on assault and battery.
 "THE COURT: I don't think it is a lesser included offense and you may have an exception to that.
"MR. WALDEN: All right, sir."
In Winstead v. State, 53 Ala. App. 222, 298 So.2d 642, this court stated:
 "Matters of this kind cannot be raised by mere exception to the oral charge . . Rather, counsel must submit written instructions covering the omitted principle in order to preserve the alleged error for appellant review."
See also: Reed v. State, 55 Ala. App. 138, 313 So.2d 564.
The court's action was proper.
 VII
We reviewed the facts in the case and found the evidence was sufficient to support the conviction. Whiddon v. State,53 Ala. App. 280, 299 So.2d 326. The motion for a directed verdict was properly denied.
No error appears in the record.
AFFIRMED.
TYSON, HARRIS and BOOKOUT, JJ., concur. *Page 403