TYSON, Judge.
James Lee Washington was charged by indictment with the murder of Nathaniel Walker, Jr., by “shooting him with a pistol” in violation of § 13A-6-2, Code of Alabama, 1975.
The jury found the appellant “guilty of murder as charged” and the trial court, following a habitual offender hearing, at which three convictions obtained in the Circuit Court of Jefferson County, Alabama, on October 27, 1980, for grand larceny, buying and receiving stolen property, and burglary and grand larceny were all placed in evidence, appellant was sentenced to life imprisonment without parole.
Emily Jones, the mother of the deceased, Nathaniel Walker, Jr., testified that her son was killed at Salter’s Barbecue on the night of October 8, 1980, and identified some photographs of his body and his automobile parked at the scene. She stated that her son was 19 years old at the time of his death and was employed at North American Van Lines in Birmingham. On cross-examination, she admitted that her son did occasionally drink “a beer or two”.
Dr. Bruce Alexander, a forensic pathologist who assisted the coroner’s office, testified he examined the body of Nathaniel Walker, Jr., on October 9, 1980, and the victim died “of a gunshot wound to the left chest and heart with resulting hemorrhage.” On cross-examination, the doctor stated that the blood alcohol content was .24%.
Reginald L. Rogers, a construction worker who was being held in the Jefferson County Jail on a robbery charge, testified that he was present at Salter’s Barbecue on the night Nathaniel Walker was shot. He *400 stated that he saw the victim fall to the ground and the police drive up. He saw two black males running away, one of them wearing blue jeans, a dark colored shirt, and had on a baseball cap which he thought was yellow in color. He stated he later talked with Sergeant Bill Gautt at City Hall on the night of October 8 about 10:00 o’clock. Rogers related that he had overheard the victim, Nathaniel Walker, attempting to talk on the telephone and that he overheard him say to the black male wearing the baseball cap, “You put your own damn money in the phone.” He stated that later he saw the victim walk back toward his car and overheard Walker state, “Why are you walking up on me?” and the black male with the baseball cap on pulled out a pistol and fired. Then the black male and his companion ran off.
On cross-examination, Rogers stated the party who fired the shot at Walker was wearing a “red baseball cap” (R. 60), but he was unable to make an identification in court of the appellant or the other party who had approached the victim, Nathaniel Walker. On cross-examination, Rogers said that the victim did not have any weapon in his hand. Rogers also admitted that his own attorney and some assistants from the district attorney’s office had talked with him at the jail, but Rogers insisted that he could not recognize the party who fired the shot.
Claudia Hill testified that she was working at Salter’s Barbecue on the night of October 8, 1980. She positively identified the appellant, James Lee Washington, in court as being one of two black males that she observed near the telephone shortly after 8:00 o’clock p.m. She also stated that she knew the victim, Nathaniel Walker, Jr., and had seen him talking on the telephone. She further testified that the appellant was wearing a red baseball cap and a pair of blue jeans and she heard Washington tell Walker, the victim, “He wasn't scared of nobody that walked.”
Claudia Hill stated that she was preparing an order for a customer and that she next heard one shot and went outside and saw Nathaniel Walker lying on the ground and saw Washington running from the phone booth down 7th Avenue and that he was wearing a red baseball cap. She also identified her sister, Sylvia Carson, as another employee working at Salter’s Barbecue. She stated that she telephoned the police after the shooting.
Sylvia Carson, a sister of Claudia Hill, testified that on the night of October 8, 1980, she too was working at Salter’s Barbecue. Shortly after 8:00 o’clock in the evening, she testified that she saw two men come up and that one of them appeared to be “drunk or something” because he had “a syringe hanging out of his arm.” She testified the two men came from the direction of a “dope house” across the street. She said the taller of the two men was cursing and she overheard him say, “He wasn’t scared of nobody, and he would kill any m.f_” She noticed that he had a pistol. She said a few minutes later she saw him go near the telephone booth and a few moments later she heard a shot. She stated that she and her sister came outside and saw the victim, Nathaniel Walker, lying on the ground, and she called to her sister to call the police. She said that someone came and put a pillow under Walker’s head and that she saw the taller man who was wearing blue jeans and a baseball 'cap “run across the lot and down 7th Avenue.” and the shorter man disappeared. She said the police and ambulance came a few minutes later and that she only heard one shot and saw no weapon on the victim, Nathaniel Walker. She, however, was not able to recognize or identify the man whom she saw wearing the red baseball cap.
Birmingham Police Detective William T. Gautt, testified that he went to the crime scene on October 8, 1980, arriving shortly after the victim’s body had been removed. He stated that he interviewed Reginald Rogers and Claudia Hill that night. He stated that he later went to California, on August 12, 1981, and brought Washington back to Birmingham.
*401 William Woods testified he lived at 1210 Apartment 8, 7th Avenue North in Birmingham. His home was two houses from Salter’s Barbecue. Sometime after 8:00 o’clock on the night of October 8, 1980, he heard a shot and saw two men running down the street and heard the taller man say, “Well, we got him,” but that he did not get a good look at either man and would not be able to identify either. He stated that the tall one had on a red baseball cap, a brown jacket and blue jeans. Woods stated that he walked over to Salter’s Barbecue and saw a black male lying on the ground and a few moments later saw the police and ambulance arrive and remove the victim.
The appellant made a motion to exclude and also a motion for judgment of acquittal because of the insufficiency of the State’s evidence. These motions were overruled.
The appellant presented no testimony at trial and following argument the trial court gave an extensive oral charge to which no exception was made except that counsel “objected to including the second count, recklessness.” (R. 173).
I
The appellant first argues that the trial court committed reversible error by allowing the State’s case to go to the jury, asserting that the evidence presented was insufficient to support a conviction. The appellant essentially bases his argument on the vagueness of the State’s witnesses’ testimony and the fact that much of the evidence is circumstantial in nature.
“In Cumbo v. State, 368 So.2d 871 (Ala.Cr.App.1978), cert. denied, 368 So.2d 877 (Ala.1979), an opinion authored by Judge Bowen of this court, we find the following authority pertinent to the issue before us:
‘In reviewing a conviction based on circumstantial evidence, this court must view that evidence in the light most favorable to the prosecution. The test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude. United States v. Black, 497 F.2d 1039 (5th Cir.1974); United States v. McGlamory, 441 F.2d 130 (5th Cir.1971); Clark v. United States, 293 F.2d 445 (5th Cir.1961).
‘(W)e must keep in mind that the test to be applied is not simply whether in the opinion of the trial judge or the appellate court the evidence fails to exclude every reasonable hypothesis but that of guilt; but rather whether the jury might so conclude. Harper v. United States, 405 F.2d 185 (5th Cir.1969); Roberts v. United States, 416 F.2d 1216 (5th Cir.1969). The procedure for appellate review of the sufficiency of the evidence has been aptly set out in Odom v. United States, 377 F.2d 853, 855 (5th Cir.1967):’
‘Our obligation, therefore, is to examine the record to determine whether there is any theory of the evidence from which the jury might have excluded every hypothesis except guilty beyond a reasonable doubt. Rua v. United States, 5 Cir., 1963, 321 F.2d 140; Riggs v. United States, 5 Cir., 1960, 280 F.2d 949. In Judge Thornberry’s words,
‘... the standard utilized by this Court is not whether in our opinion the evidence and all reasonable inferences therefrom failed to exclude every hypothesis other than guilt, but rather whether there was evidence from which the jury might reasonably so conclude.’ Williamson v. United States, 5 Cir.1966, 365 F.2d 12, 14. (Emphasis supplied)”
See, Hayes v. State, 395 So.2d 127 (Ala.Cr. App.1980), cert. denied, 395 So.2d 150 (Ala. 1981).
A verdict of guilty should only be set aside on grounds of insufficiency of evidence when, after allowing all reasonable presumptions as to its correctness, the preponderance of evidence against the verdict is so clear as to convince this court that it was wrong and unjust. Bell v. State, 339 *402 So.2d 96 (Ala.Cr.App.1976). Williams v. State, 420 So.2d 819 (Ala.Cr.App.1982).
Here, the State presented the testimony of one witness who positively identified the appellant at the crime scene, cursing and talking to the victim near the telephone booth, shortly before the shooting. Three other witnesses stated that they saw a person wearing clothing which resembled that worn by the appellant on the night in question, running from the crime scene shortly after the shooting, though they were unable to make a positive identification in court. Under these circumstances, we are of the opinion that the trial judge correctly overruled appellant’s motion and allowed this case to go to the jury.
II
Appellant refers to the closing argument of the district attorney and states that the trial court improperly allowed prejudicial argument. Record 157-160 is as follows:
“(Whereupon, Mr. Mahon then addressed the jury in closing arguments, at which time the following occurred:)
“MR. MAHON: Not because somebody decides, well, this may not be the airtight case that some of them are. Not because some prosecutor says, well, I have got to make a deal, I have got to plea bargain. I am not going to do that in this case, this case is serious.
“MR. MILLER: Objection, Your Hon- or.
“THE COURT: Let’s steer away from plea bargaining.
“MR. MAHON: I submit to you it is not our fault for having to bring it to you two years later, because the defendant decided that Birmingham was not a good place for him to be any more.
“MR. MILLER: Objection, Your Honor.
“MR. MAHON: He went to California.
“THE COURT: Overruled.
“MR. MAHON: We can’t change what Reginald Rogers decided to say. But, you can guess who he is, a convicted robber, who happened to share the same accomodations.
“MR. MILLER: Your Honor, I am going to object to that—
“MR. MAHON: The evidence is that.
“MR. MILLER: The evidence has not been shown that they stayed in the jail—
“THE COURT: Well, there were certain things said outside the presence of the jury, Steve. And I will ask you to segregate those from what come in before the jury, in your own mind as you draw your inferences.
“MR. MAHON: All right.
“(Whereupon, Mr. Mahon concluded his closing argument at which time the following occurred:)
“MR. MILLER: Your Honor, at this time we would like to make a motion for a mistrial based on the statement made by the prosecutor that there was some type of plea bargaining in this case. And based on that, it would be highly prejudicial in that there has been no plea bargaining in this case whatsoever before the jury—
“THE COURT: I think that in effect is what he said, Vic, this was not a case of plea bargaining. Am I correct?
“MR. MAHON: That is correct.
“MR. MILLER: Well, he indicated, Judge, this is not a case that he would plea bargain in, in that — you know, with the inference that the defense in this case has attempted to make some type of plea of guilty, when that has not been the case.
“THE COURT: Yes. Well, I did sustain your objection in effect and ask Steve to steer away. I will let you respond in kind, if you wish, in your argument. I will deny your motion for a mistrial.-
“MR. MILLER: Okay.
“THE COURT: But, if you wish to respond, I would—
“MR. MILLER: We would like to have that area opened up in which we can respond to clear that aspect up.
“THE COURT: All right, sir.
“MR. MILLER: We wouldn’t want the jury to go in there thinking we have attempted—
*403 “THE COURT: Well, I think your speaking objection is probably very effective, but if you wish to further respond, I will let you do it.
“MR. MILLER: All right. Thank you, Judge.
“THE COURT: All right. Mr. Bailey.”
In Favor v. State, 389 So.2d 556 (Ala.Cr.App.1980), Judge Bookout noted:
“A trial court’s ruling on a motion for a mistrial is reviewable on appeal. Sten-nett v. State, Ala., 340 So.2d 65 (1976). However, such a motion is addressed to the sound discretion of the trial judge, and his ruling will not be reversed in the absence of a clear showing of abuse of discretion. Shadle v. State, 280 Ala. 379, 194 So.2d 538 (1967); Heard v. State, Ala.Cr.App., 351 So.2d 686 (1977).”
In the instant case, we find instructions from the trial judge as noted in the above colloquy concerning the argument made by the district attorney. Further, during the oral charge of the court, the trial judge explained that arguments of counsel should be viewed in the heat of debate and from their impressions of the evidence. Counsel may argue matters of legitimate inference and thereby treat the evidence presented in his own way. Mathis v. State, 414 So.2d 151 (Ala.Cr.App. 1982), Bailey v. State, 375 So.2d 1278 (Ala. Cr.App.1979), cert. denied, 375 So.2d 1284 (Ala.1979). No firm legal standards by which the alleged prejudicial qualities of a proper argument by a prosecutor during trial can be gauged. Each case must be reviewed on its own merits. Authorities cited. Here, we believe, the trial judge’s instructions to have correctly admonished the jury concerning any improprieties and we cannot ascribe error to the record here presented. Lamar v. State, 356 So.2d 680 (Ala.Cr.App.1977), Bailey, supra.
Ill
Appellant’s counsel next asserts that the trial court erred in its charge to the jury by referring to a “second count of recklessness” when there was only one count in the indictment.
Counsel is correct that the indictment in the instant cause charges murder in one count. At the conclusion of the trial court’s oral charge, counsel made the following comment: (R. 173)
“MR. MILLER: May it please the Court, the defendant in this case is charged with a one count indictment. I would object to including the second count, recklessness.
“THE COURT: So noted.
“MR. MILLER: Other than that, we accept the charge.
“THE COURT: Very good. All right.”
We are of the opinion that the objection above noted is insufficient to preserve any alleged error in the oral charge of the court for review. Allen v. State, 414 So.2d 989 (Ala.Cr.App.1981), affirmed, 414 So.2d 993 (Ala.1982). Such a fragmentary objection as above noted is insufficient to preserve the error in this cause. Where, as here, counsel asserts the oral charge is not as full and instructive as defendant’s counsel desires, his remedy is to tender written charges which elucidate and explain the defendant’s theory of the case. Smith v. State, 262 Ala. 584, 80 So.2d 307 (1955), Winstead v. State, 53 Ala.App. 222, 298 So.2d 642, cert. denied, 292 Ala. 761, 298 So.2d 646 (1974). Here, no such written instructions are tendered for the trial court or are present in this record.
IV
Finally, appellant asserts that the appellant was denied due process and equal protection of law in that being sentenced as a habitual offender constituted cruel and unusual punishment.
This contention was rejected by this court in Watson v. State, 392 So.2d 1274 (Ala.Cr.App.1980), cert. denied, 392 So.2d 1280 (Ala.1980).
Moreover, the appellant’s argument that the three prior convictions which were all had on the same date should be treated as one conviction for habitual offender pur *404 poses, rather than three, has also been rejected expressly by this court in Seritt v. State, 401 So.2d 248 (Ala.Cr.App.1981), cert. denied, 401 So.2d 251 (Ala.1981) and Bates v. State, 405 So.2d 1334 (Ala.Cr.App.1981), cert. denied, 405 So.2d 1339 (Ala.1981).
We have carefully examined this record and find same to be free of error. The judgment appealed from is due to be and the same is hereby affirmed.
AFFIRMED.
All the Judges concur.