The defendant was indicted and convicted for receiving stolen property in the first degree in violation of Section 13A-8-17, Code of Alabama 1975. He was sentenced as an habitual offender to life imprisonment. Four issues are raised on appeal.
 I
The defendant argues that his admission that he had in his possession the keys to the van in which the stolen property was found was made in violation of his rights under Miranda v.Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). He contends that the investigation had focused on him when the officer requested the keys and therefore the Miranda warnings were required.
During the night of October 28, 1980, Rolling Acres Antique Shop in Shelby County was burglarized. Between four and five in the afternoon on November 15, 1980, Walker County Sheriff's Investigator Frank Cole received a telephone call from a confidential informant who told him that the defendant "had been trying to sell antique clocks and vases out of" an orange van. The informant stated that the defendant was driving the van and had "pulled up in front of the Blue Too Lounge located on Old 78 Highway in Jefferson County." This informant had previously provided Cole with information that had resulted in "at least" twenty-five convictions. Cole told his informant, "if the van moves to notify me right back." Cole relayed this information to Sergeant Clyde Amberson of the Jefferson County Sheriff's Department.
Investigator Cole arrived at the Blue Too Lounge approximately fifteen minutes after he had received the informant's tip. He observed the orange van and waited approximately forty-five minutes for Sergeant Amberson to arrive.
When Amberson arrived, the two officers looked in the window of the van. Cole "could see some clocks and vases." Amberson opened the side door of the unlocked van and removed a quilt covering a "long clock" lying on the floor, and then returned the quilt to its original position.
Sergeant Amberson went into the lounge and asked for the defendant who identified himself and accompanied the officer outside. Upon being asked, the defendant stated that the van belonged to Ronnie Key, who was inside the lounge. Amberson went back into the Blue Too and asked Key to accompany him outside. In the defendant's presence, Key admitted ownership of the van.
Sergeant Amberson then asked Key if he had been driving the van and if Key would mind the officers looking inside. Key gave his consent for the search but stated that he had not been driving the van, that he had loaned it to the defendant who had "just brought it back a few minutes ago."
When Amberson asked Key for the key to the van, Key said that the defendant had it. Sergeant Amberson then asked the defendant "have you got the key" and the defendant said yes and pulled the key out of his pocket and gave it to Sergeant Amberson. It is this response which the defendant argues should not have been admitted into evidence.
The officers verified that the key fit the van. Upon closer inspection, they found that the merchandise in the van matched the description of some of the items taken in the antique shop burglary.
The defendant argues that his admission that he possessed the key was inadmissible because it was made after the investigation had focused on him but before he had been advised of his Miranda rights. *Page 961 
This Court faced a similar situation in Harris v. State,376 So.2d 773 (Ala.Cr.App.), cert. denied, 376 So.2d 778 (Ala. 1979). There we held that "focus in and of itself is not the determinative question in determining the existence of custody." 376 So.2d at 777.
The Miranda procedural safeguards are required only when a suspect is interrogated in a custodial setting. Miranda,384 U.S. at 477-78, 86 S.Ct. at 1629-30. "Custodial interrogation" was defined by the Miranda Court as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda, 384 U.S. at 444, 86 S.Ct. at 1612.Oregon v. Mathiason, 429 U.S. 492, 495, 97 S.Ct. 711, 714,50 L.Ed.2d 714 (1977).
The Supreme Court has not defined custody. Courts have adopted a variety of approaches for determining whether a person is in custody for purposes of the Fifth Amendment. Annot. 31 A.L.R.3d 565 (1970). However, it is generally agreed that Miranda is "inapplicable to traditional investigatory functions such as general on-the-scene questioning." Hall v.State, 399 So.2d 348, 351 (Ala.Cr.App. 1981). "The line of demarcation between a general investigation and a custodial interrogation must be determined by a case-by-case factual analysis." Hall, 399 So.2d at 351-52.
While this "line of demarcation" may not always be clearly distinguishable, it was not crossed in this instance. The evils condemned in Miranda are not present here. The questioning (do you own the van and do you have the key) was of very short duration and was conducted in a casual and reasonable manner in the "absence of any apparent purpose either to force or to trick the suspect into an admission of guilt." United States v.Gibson, 392 F.2d 373, 378 (4th Cir. 1968).
After reviewing the totality of the circumstances involved in this case, we find no element of coercion or custody present in the brief questioning of the defendant. Harris, supra; Peoplev. Martin, 78 Mich. App. 518, 260 N.W.2d 869 (1977). See alsoJackson v. State, 412 So.2d 302 (Ala.Cr.App. 1982); 31 A.L.R.3d at Section 9. Although the officers may have "zeroed in" on the defendant, this does not establish the existence of custodial interrogation. Tucker v. State, 362 So.2d 1316, 1318-19
(Ala.Cr.App. 1978); Wright v. State, 54 Ala. App. 725,312 So.2d 417, cert. denied, 294 Ala. 99, 312 So.2d 421 (1975); Moore v.State, 54 Ala. App. 22, 304 So.2d 263, cert. denied, 293 Ala. 768, 304 So.2d 268 (1974).
 II
The seizure of the property in the van was proper because the owner of the van had consented to the search. Schneckloth v.Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973);McLoyd v. State, 390 So.2d 1115 (Ala.Cr.App.), cert. denied,390 So.2d 1121 (Ala. 1980).
 III
The defendant argues that the State failed to prove that he was ever in possession of the stolen property found in Key's van.
While no witness testified that he actually saw the defendant in the van, there was testimony that the defendant had recently borrowed the van, was the last person to use the van and the stolen property was not in the van before the defendant borrowed the vehicle. Although the defendant did not own the van in which the stolen goods were found, he was the last person to drive it prior to the discovery of the stolen antiques. The antiques were clearly visible inside the van.
The defendant had the key to the van in his pocket. As opposed to anyone else, including the actual owner, he had control of the van at the time in question. "Possession of keys to a locked container may be enough to vest in the possessor control over the contents of the container." People v. Peters,43 A.D.2d 599, 348 N.Y.S.2d 786, 789 (1973). See alsoChristopher v. State, 639 S.W.2d 932, 935 (Tex.Cr.App. 1982). Here, the defendant's recent use of the van and his possession of the key provide sufficient evidence of his control of the van and knowledge of the stolen property contained inside. *Page 962 
The defendant's constructive possession of the stolen property may be proved by circumstantial evidence. "All of these necessary ingredients (to prove a prima facie case of receiving stolen property) may be, and most of them usually are, shown by circumstances from which the jury, using their everyday common sense and observation, must draw their conclusions." Walker v. State, 355 So.2d 755, 757 (Ala.Cr.App. 1978). See also Boykin v. State, 398 So.2d 766 (Ala.Cr.App.), cert. denied, Ex parte Boykin, 398 So.2d 771 (Ala. 1981); Simsv. State, 391 So.2d 1107 (Ala.Cr.App. 1980).
The circumstantial evidence in this case affords ample proof of the defendant's guilt despite his argument that there are plausible, innocent explanations for each "incriminating" fact in evidence against him.
 "(B)reaking the evidence down into discrete `facts', each with its own innocent explanation, distorts the jury's actual view of the case. For even if the jury had found that each piece of evidence, standing alone, was consistent with innocence, the jury nevertheless could reasonably have concluded that the evidence, taken as a whole, excluded every reasonable hypothesis but that of guilt. United States v. Rodriguez, 654 F.2d [315] at 317 [ (5th Cir. 1981) ]. Finally, we must view the evidence in the light most favorable to the government and under this standard . . . (the defendant's) `innocent explanation' argument obviously must fail." United States v. Hinds, 662 F.2d 362, 367 (5th Cir. 1981).
 IV
The defendant contends that the trial court erred in substituting an alternative juror for a member of the jury when the alternate had already been discharged and the jury had been ordered to retire to the jury room.
After the trial judge charged the jury, he told the alternate juror she could "stay out" and instructed the jury to "retire to the Jury Room." Immediately, Juror Woodard stated, "I don't know if this has any bearing, but I may know his (defendant's) father. I didn't know it until just a while ago when he (father) walked in."
Almost immediately after this, the trial judge stated, "Tell this jury don't start deliberating." He then questioned Juror Woodard concerning his knowledge of the defendant's father.
 "THE COURT: Here's the thing, Mr. Woodard. I have an extra juror. If there's any doubt in your mind this is the time to express it.
 "JUROR WOODARD: Yes, sir. Well, I would probably feel a little bit guilty one way or the other if it did turn out that way (guilty verdict). But I would do what was right, what I thought was right."
The trial judge then sent Juror Woodard and Alternate Wheeler out of the courtroom and discussed the matter with the attorneys.
In excusing Juror Woodard, the judge stated:
 "Well, he may have (stated that he'd judge the case fairly). But you can see he's under tension. I could see it. And here is what impresses me. He didn't know the father, but he was able to walk up here and tell me that that father was sitting back there, and the reason he knew it was he was sitting with the lady. Well, how does he know the lady? Why is that significant? It's significant to me because he pops out and says the father is there when nobody has ever identified the father. For aught that appears no one knows the father, no one on that jury. But because he sat next to that lady he said he put two and two together. And I'm going to excuse Mr. Woodard."
The trial judge told Juror Woodard the reason he was excusing him: "I think it puts you in the middle too much. And it seemed to me that you were kind of tense over the matter and tight, and I don't blame you."
The record then reflects that "at 11:10 a.m. the jury retired to commence deliberations."
On appeal, the defendant raises four objections to the juror substitution.
(1) The substitution does not violate Alabama Code volume 14, Appendix Section 724 (1940). That section provides: *Page 963 
 "The court may order an alternate juror to take the place of a principal juror only when a principal juror, prior to the retirement of the jury to consider its verdict, is excused by the court, in the exercise of its sound discretion, from further service by reason of some mental or physical ailment in such principal juror or his confrontation with some emergency, rendering him unable to perform his duties satisfactorily."
Here, the substitution occurred "prior to the retirement of the jury to consider its verdict." We interpret the phrase "prior to the retirement of the jury to consider its verdict" as meaning before the jury began its deliberation.
(2) The defendant argues that Juror Woodard never disclosed any bias and was not shown to be suffering from "some mental or physical ailment . . ., rendering him unable to perform his duties satisfactorily." While the trial judge's excusal of the principal juror because he was "kind of tense over the matter and tight" reaches the broadest definition of the phrase "mental or physical ailment", his action was consistent with the purpose of the statute. A technical and overly strict interpretation of Section 724 would defeat the intent of the legislature. In Winstead v. State, 53 Ala. App. 222, 225,298 So.2d 642, cert. denied, 292 Ala. 761, 298 So.2d 646 (1974), the substitution was held proper where the principal juror stated that she was not "emotionally" able to continue. Some courts have held that the reasons enumerated in the statute authorizing the substitution of jurors and use of alternates are not exclusive. Washington v. State, 568 P.2d 301, 308
(Okla.Cr.App. 1977), citing People v. Howard, 211 Cal. 322,295 P. 333 (1930).
The trial judge is in the best position to observe the mental and physical condition of a juror and to determine if that condition renders the juror unable to perform his duties satisfactorily. In the absence of some clear abuse of his discretion or a showing of bias and prejudice to the defendant, the trial judge's exercise of that discretion should not be disturbed. Since the alternate juror is selected "by lot" from a list of thirteen jurors struck by both parties, Volume 14, Appendix Section 722, we cannot infer any prejudice to the defendant.
(3) The defendant argues that once Alternate Wheeler had been discharged, she could no longer serve as an alternate or participate in the jury's deliberation.
Alternate Wheeler never left the courtroom after she was "excused" until she was sent into an adjoining room to wait while the attorneys argued this issue of substitution to the trial judge.
Alabama Code volume 14, Appendix Section 726, provides that "(a)ny alternate juror who has not been ordered to take a place on the jury, prior to the retirement of the jury to consider its verdict, shall be discharged." This "rule does not purport, however, to deny power to the trial court to reconstitute someone as a juror who previously has been discharged." UnitedStates v. Evans, 635 F.2d 1124, 1127 (4th Cir. 1980), cert. denied, 452 U.S. 943, 101 S.Ct. 3090, 69 L.Ed.2d 958 (1981).
(4) Finally, the defendant challenges the substitution for the reason that both Juror Woodard and Alternate Wheeler were impermissibly separated from the rest of the jury.
Section 12-16-9 (d), Code of Alabama 1975, authorizes the trial judge to permit, in his discretion, the separation of any jury during pendency of the trial of any noncapital felony. Since the jury in this case had not been sequestered during the trial and had in fact previously separated for meals and for the night, we find no cause for prejudice to the defendant.
Our review and consideration of the issues raised on appeal convince us that the judgment of the circuit court is due to be and it is hereby affirmed.
AFFIRMED.
All Judges Concur. *Page 1148