Appellant was convicted of first degree rape and second degree kidnapping. He was sentenced to thirty years' imprisonment for the rape and eight years', concurrent, for the kidnapping.
The state's evidence tends to show that James Michael Williams, the appellant, had recently been promoted to the position of Chief Jailer of the Macon County Jail in Tuskegee. On the morning of July 1, 1984, he released two of the three women who were in the jail, leaving one, whom we shall refer to only as Lolita, alone with him. The previous night, Lolita had been arrested on a second degree assault charge. She awoke early in the morning in hopes of getting out of jail — as the two other women had done. Williams told her that he would help her get out of jail. He also told her that she was too pretty to be in jail and that he could get her picture in Hustler magazine.
He told her that to be sure, he would need to look at her naked to see if she had any scars or other marks. Lolita took off her shirt for him. He told her he knew how to make up or cover up the stretch marks on her body so that she would look her best for the camera.
After talking to her some more about nude modeling, he arranged for her to make bail. She signed the bond which had been prepared for her, but she put down her previous address so that Williams would not know where she lived.
Williams then revealed his plan, telling her to take a cab and meet him at a Winn-Dixie store; from there they were to go to his house to take photos of Lolita.
Lolita, however, took the cab to a friend's home. When she did not show up at Winn-Dixie, Williams hired the same cab driver to take him to where Lolita had been dropped off. Her friends told Williams that Lolita was not there when Williams came to the door. Williams, with his uniform, badge, and gun still on, walked in anyway and began yelling for her — that he "knew [she] was there." Lolita then came out from behind a bed, where she was hiding. Williams told her that she was in trouble for putting down the wrong address on the bond and that he had to take her back to the station. He took her by the arm and led her to the cab.
Williams then ordered the cab driver to take them to his home, where he proceeded to talk to Lolita about nude modeling.
Eventually, Williams began licking Lolita's back. He then undressed her, and brought her out of the kitchen into the living room, where he laid her down on a sleeping bag on the floor. When Lolita became more persistent in resisting his advances, *Page 227 
he grabbed her hands and held them back over head. He then proceeded to rape her. He continually threatened her with jail throughout the encounter.
Although Lolita had an opportunity to report this soon after it occurred, she stated that she was still afraid and did not report it to authorities until the next day, and did not sign a warrant until July 11, 1984, ten days later.
 I
Appellant now challenges the sufficiency of the evidence to support the rape I and kidnapping II convictions.
 A
Section 13A-6-61, Code of Alabama 1975, states in pertinent part:
 "(a) A male commits the crime of rape in the first degree if:
 "(1) He engages in sexual intercourse with a female by forcible compulsion;"
Appellant specifically raises the question of whether there was sufficient evidence of forcible compulsion since the evidence of this crime was the testimony of the victim. The law is clear that a victim's testimony alone, as to forcible compulsion, is sufficient to present to a jury and to support a verdict. Lake v. State, 475 So.2d 896 (Ala.Cr.App. 1985).
 B
While Appellant was charged with kidnapping I, the lesser included offense of kidnapping II was the crime with which he was ultimately convicted.
Appellant contends that the element of "secreting or holding [a person] in a place where [he or she] is not likely to be found" was not met by the evidence. Section13A-6-40(2), Code of Alabama 1975. Appellant argues that the evidence did not sufficiently establish the abduction requisite of kidnapping II and for that reason the conviction should be overturned.
However, there is ample evidence which shows that Lolita was secreted and held in a place where she was not likely to be found. When she was taken, it was under the pretense that she would be returned to jail. Williams was still wearing his badge and gun, which persuaded Lolita's friends of his authority. He continually threatened her with jail during the time he held her, which intimidated her with the full force of the law into remaining in his presence. Also, it is apparent that none of her friends or anyone else who knew her knew that she had been taken to his house. Whether or not it was Williams's specific intention to conceal her whereabouts is not crucial to the state's case; specific intent is not a legal requirement of kidnapping II. Guess v. State,507 So.2d 546, 548 (Ala.Cr.App. 1986), aff'd, 507 So.2d 551
(Ala. 1987).
 II
Appellant next contends that inculpatory statements made to his friend, a fellow law officer, and to the victim's boyfriend should not have been admitted into evidence. This, he claims, is a violation of Miranda v. Arizona,384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). He contends that no Miranda warnings were given, and there was no showing that the statements were voluntarily made.
Soon after the rape occurred but before it had been reported, appellant called his friend, Officer Baker. In that conversation appellant said, "Man, I know I fucked up but I wanted to try to help the girl. I didn't want to see her stay in jail. She's a friend of mine."
The other inculpatory statement was made to Lolita's boyfriend. Appellant went to the boyfriend's house and initiated a conversation with him. Appellant asked him what Lolita had told the police in her statement. The boyfriend responded that he did not know. The boyfriend eventually asked appellant, "Had [appellant] had sexual intercourse with her." To which the appellant responded that he had.
"The Miranda, procedural safeguards are required only when a suspect is interrogated in a custodial setting."Cork v. State, 433 So.2d 959, 961 (Ala.Cr.App. 1983), citing Miranda v. Arizona, *Page 228 384 U.S. at 477-78, 86 S.Ct. at 1629-30. "Custodial interrogation" was defined in Miranda as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Cork, supra, citingMiranda, 384 U.S. at 444, 86 S.Ct. at 1612.Oregon v. Mathiason, 429 U.S. 492, 495,97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977).
Both of these inculpatory statements were shown to have been initiated by appellant, and to have been voluntarily made. Therefore, admitting such testimony at trial was not error.
Furthermore, the statement made to the boyfriend, who was not a law enforcement officer, was voluntary and admissible.Primm v. State, 473 So.2d 547, 553 (Ala.Cr.App. 1984).
 III
The final issue raised by appellant is whether the trial court abused its discretion in denying his motion for continuance based on the possible illegality of his extradition from Michigan.
Extradition became necessary when appellant left the state after the guilty verdicts were returned, but before sentencing. Appellant now seeks to have his conviction reversed and the case remanded in order to ascertain whether the sentencing court had jurisdiction. He alleges that it did not have jurisdiction because of the illegality of the extradition; he was not given a chance to present this issue to the trial court because he was denied a continuance.
The trial court did hold a relatively lengthy hearing on the challenge to the legality of the extradition. The record reveals that after Williams had lived as a fugitive in Michigan for about three years, misfortune struck in the form of a domestic squabble. When Williams's wife learned that the police were going to release him from jail on the "family matter" she informed the police that he had left Alabama to avoid prosecution for rape. The hearing came to a close when the trial judge learned that the appellant had signed a waiver in Michigan, stating he would not resist extradition. The trial court granted very wide latitude to appellant, allowing him to enter hearsay and other evidence into the record in an attempt to let him prove his position. The trial court acted without error. A motion for continuance is a matter of discretion for the trial court; denial of such a motion will constitute error only if denial was a gross abuse of discretion. Richardson v. State, 476 So.2d 1247
(Ala.Cr.App. 1985).
There was conclusive proof on record that the extradition was conducted in accordance with the law. Furthermore, almost no irregularity in an extradition procedure voids a subsequent conviction. Ker v. Illinois,119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886); Mahon v.Justice, 127 U.S. 700, 8 S.Ct. 1204, 32 L.Ed. 283
(1888); Davis v. State, 536 So.2d 110 (Ala.Cr.App. 1987).
Accordingly, this case is due to be affirmed.
AFFIRMED.
All the Judges concur.