The appellant, Richard Corey Fox, was indicted and charged with capital murder. He was tried and was found guilty of capital murder as charged in the indictment. Following the sentencing phase of the trial, the jury recommended punishment of life without parole. The trial judge accepted the jury's recommendation and sentenced the appellant to life imprisonment without parole.
On January 16, 1990, Karie McMillin, sister of 80-year-old Irene Moran, dropped Irene off at the her house. The next day McMillin tried unsuccessfully to reach Irene by telephone. Later that day, January 17, 1990, McMillin went to Irene's house to check on her. McMillin entered the house and upon entering Irene's bedroom, found her dead. Irene had been killed by several blows to the head with a blunt instrument. A videocassette recorder, a .38 revolver, and Irene's purse were missing from the house.
Sergeant Brown of the Bessemer Police Department first talked to the appellant on January 20, 1990, at the appellant's apartment. Brown talked with the appellant next on January 24, 1990, at the Bessemer Police Department. Brown testified that *Page 485 Miranda warnings were given to the appellant on January 24, 1990. The next day, January 25, 1990, Brown talked to the appellant at the police department, again advising him of his Miranda rights. Brown also gave the appellant a waiver form, asking him if he understood his rights. The appellant signed the waiver and stated that he understood his rights. Brown tape-recorded the conversation on January 25 with the appellant.
The tape and transcript of the tape were introduced at trial. The appellant told Sergeant Brown during the tape recorded conversation that he had gone to the victim's house during the early morning hours of January 17, 1990. The appellant stated that he was going through the victim's purse when the victim walked up behind him. The appellant stated that he struck the victim with a hammer. After hitting the victim, the appellant carried her to a bed and killed her by hitting her several more times with the hammer. The appellant stated that he took a videocassette recorder and a revolver from the house and then called a cab.
The appellant's story was somewhat different at trial. He testified that he, along with Carrie Lagrone and Luther Ledger, went to the victim's house to steal something so that they could buy crack cocaine. The appellant testified that ultimately all three of them entered the house. The appellant said that Ledger told him to go outside to cut the telephone wires, which he did. Upon reentering the house, the appellant heard the victim screaming and saw Ledger standing over her "swinging." The appellant claimed that he never intended to kill the victim and that he did not know Ledger intended to. The appellant said that he and Ledger took a videocassette recorder which they sold the next day, using the money to buy crack cocaine.
The victim's purse and revolver were never found. However, Sergeant Brown and the appellant retrieved the videocassette recorder from J J Auto Brokers, where it had been sold by Luther Ledger.
The clothes worn by the appellant on the night of the crime were recovered from the appellant's apartment. These clothes had blood stains which were found to be ABO — type O. The victim had type O blood.
 I
The appellant first contends that the trial court's denial of his motion for individual voir dire, and for sequestration of jurors during voir dire constituted reversible error. The trial judge allowed individual questioning of some of the venire who had indicated exposure to pretrial publicity. Specifically, it seems that the appellant is arguing that in view of the answers given by some of those individually questioned, the trial court should have allowed individual voir dire of all members of the voir dire.
"As a general rule, it is within the trial court's discretion to allow individual voir dire of prospective jurors."Waldrop v. State, 462 So.2d 1021, 1025
(Ala.Crim.App. 1984), cert. denied, Waldrop v. Alabama,472 U.S. 1019, 105 S.Ct. 3483, 87 L.Ed.2d 618 (1985). Waldrop
held further that,
 prospective jurors who have heard of a previous conviction on the same charges need not be automatically excluded from the venire. . . . . A prospective juror with knowledge of a previous conviction need not be dismissed for cause, if the trial court determines that the juror does not have a fixed opinion of appellant's guilt, but rather can lay aside any preconceived notions or opinions and render a verdict based solely upon the evidence presented in court."
In the instant case, the trial judge asked the prospective jurors collectively whether anyone
 "recognized this case . . . or was familiar with this case . . . so that you knew what is alleged to have happened by some prior news account that you may have read, seen or heard." Later the judge stated: "Some of you responded to questions yesterday that I asked . . . which will require that we go into your responses individually. Some of you stated that you had previously heard something about this case and we need to find out a little bit about that to find out if what *Page 486 
you previously heard is such that you could not erase that from your mind. . . ."
As this court previously held in Kuenzel v. State,577 So.2d 474 (Ala.Crim.App. 1990), aff'd, Ex parteKuenzel, 577 So.2d 531 (Ala. 1991), cert. denied,Kuenzel v. Alabama, ___ U.S. ___, 112 S.Ct. 242,116 L.Ed.2d 197 (Ala. 1991). "there is no indication that the voir dire examination of the jury venire was inadequate. . . ." The trial judge inquired as to whether anyone was aware of what had happened in this case. Several of the venire responded, and the trial judge questioned these prospective jurors individually. We conclude that the trial judge was within his discretion in denying the appellant's motion for individual voir dire of the venire.
 II
Next, the appellant claims that the trial court erred when it ultimately denied his request for appointment of a private psychiatrist after the appellant's evaluation in the state facilities indicated that he was competent. The United States Supreme Court has held that "when the defendant is able to make an ex parte threshold showing to the trial court that his sanity is likely to be a significant factor in his defense, he is entitled to psychiatric assistance at trial." Ake v.Oklahoma, 470 U.S. 68, 83, 105 S.Ct. 1087, 1096,84 L.Ed.2d 53 (1985).
Furthermore, "a criminal defendant does not have a right to a mental examination merely because he requests one."Stewart v. State, 562 So.2d 1365 (Ala.Crim.App. 1989). Stewart also holds that a criminal defendant is not entitled to "a free psychiatric evaluation merely because he is indigent and such defendant will be entitled to state funded psychiatric assistance only after he has made a preliminary showing that his sanity at the time of the offense is questionable."
In this case, the trial judge stated that he would not make the decision to permit psychiatric assistance until he received the report of the mental examination by the state facility. Upon evaluation of this report, the trial judge stated that he did not "see the need to go further . . . because there is nothing in the report that seems to indicate any type of mental disease or defect. . . ." We find no error on the part of the trial judge on this issue. Further, the appellant offers no evidence that his sanity at the time of the offense was questionable. The appellant made no ex parte showing that his sanity would be a significant factor in his defense. Finally, the trial judge did indeed grant a mental evaluation and determined that there was no need for the appellant to have psychiatric assistance at trial or to undergo further mental evaluation.
 III
The appellant also contends that the trial court erred in admitting his statements into evidence. Specifically, the appellant argues that the two tape recorded statements and the written transcript of the statements that the State introduced should not have been admitted into evidence.
On January 20, 1990, three days after the murder, Sergeant Brown spoke with the appellant the first time at the appellant's apartment. At that time, the appellant was neither a suspect nor was he in custody. Sergeant Brown testified at trial that the appellant became a suspect following the January 20 interview. Four days later, on January 24, Brown spoke with the appellant again, this time at the police station. Brown testified that he gave the appellant his Miranda
warnings, though he did not record the recitation or obtain a waiver from the appellant. At that point, the appellant was still not under arrest or in custody. The next day, January 25, 1990, the appellant voluntarily went to the police station. Upon his arrival there around noon, the appellant spoke with Lieutenant D.A. Farr, because Sergeant Brown had not arrived at the police station yet. Farr testified at trial that he gave the appellant his Miranda warnings during the interview, but did not tape record the warnings. Following the interview, the appellant was given a polygraph test. The appellant signed a standard polygraph waiver form prior to the polygraph. Three hours *Page 487 
later, around 3:16 p.m., the appellant gave a statement to Sergeant Brown. Brown read the appellant his Miranda
rights prior to this statement and received a signed waiver from the appellant. This Miranda warning and statement were tape recorded by Sergeant Brown. About three hours later, Brown interviewed the appellant again. This interview was also taped. At the beginning of these two interviews, Brown advised the appellant of his Miranda rights. These last two statements on January 25 are the statements at issue here.
The appellant claims that the pressure exerted on him from January 20 to January 25 caused him to give the two statements on the January 25. The appellant reasons that because he was coerced into making these statements, they should not be admitted into evidence. This court has stated previously:
 " 'The Miranda procedural safeguards are required only when a suspect is interrogated in a custodial setting. Miranda, 384 U.S. [436] at 477-78, 86 S.Ct. [1602] at 1629-30 [16 L.Ed.2d 694] (1966). "Custodial interrogation" was defined by the Miranda Court as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda, 384 U.S. at 444, 86 S.Ct. at 1612 Oregon v. Mathiason, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977)."
Cork v. State, 433 So.2d 959, 961 (Ala.Crim.App. 1983). Cork went on to hold that "the line of demarcation between a general investigation and a custodial interrogation must be determined by a case-by-case factual analysis." In the instant case, Sergeant Brown spoke with the appellant on four separate occasions. The appellant claims that the last two statements should not be admitted because he was coerced into making those statements during the first meetings. We find no coercion on the part of Sergeant Brown or the Bessemer Police Department. The appellant voluntarily agreed to talk with the police. Furthermore, at no point prior to making the last two statements was the appellant interrogated in a custodial setting. He was not under arrest or in custody; he had come to the police voluntarily. Therefore, theMiranda procedural safeguards were not required. We find that the trial court did not err by allowing the appellant's statements into evidence.
 IV
Next, the appellant argues that the trial court erred in admitting photographs and slides of the victim into evidence. The appellant concedes that photographic evidence is admissible even though such evidence is cumulative, demonstrative of undisputed facts, or gruesome so long as that evidence tends to shed some light on the case. However, he contends that this law is inapplicable here, though he fails to substantiate this claim.
The appellant's claim is totally without merit. The Supreme Court of Alabama has stated that "photographs that show the external wounds of a deceased victim are admissible even though the evidence is gruesome and cumulative and relates to undisputed matters." Ex parte Siebert, 555 So.2d 780,783 (Ala. 1989), cert. denied, Siebert v. Alabama, ___ U.S. ___, 110 S.Ct. 3297, 111 L.Ed.2d 806 (1990).
 V
The appellant's fifth contention is that the trial court erred in denying his challenge for cause of venirewoman M.N. Ms. N.'s cousin was murdered 15 years ago. Ms. N. indicated that she did not know whether her previous personal experiences would affect her decision in this case. However, Ms. N. also indicated that she would be able to follow the court's instructions.
This court has held that "a trial court's ruling on challenges for cause based on bias is entitled to great weight and will not be disturbed on appeal unless clearly shown to be an abuse of discretion." Clark v. State,443 So.2d 1287 (Ala.Crim.App. 1983). Furthermore, the Supreme Court of Alabama has held that the "qualification of a juror is a matter within the *Page 488 
discretion of the trial court, and . . . a reversal is not appropriate absent abuse of discretion." Knop v.McCain, 561 So.2d 229 (Ala. 1989).
"The test to be applied in determining whether a juror should be removed for cause is whether the juror can eliminate the influence of his previous feelings and render a verdict according to the evidence." Rowell v. State,570 So.2d 848, 855 (Ala.Crim.App. 1990). The court in Rowell
stated further " 'Ordinarily a juror is not disqualified where it appears that he is willing to follow the instructions of law given by the trial court and is able to decide the case impartially according to the evidence notwithstanding his scruples.' " quoting Barbee v. State, 395 So.2d 1128,1130 (Ala.Cr.App. 1981).
The appellant's argument is without merit. Ms. N. indicated that she could follow the instructions of the trial court. She gave no indication that she could not lay aside her personal views and decide the case on the law and evidence. There is no evidence that she could not decide the case impartially. The trial court did not err in this instance.
 VI
Finally, the appellant argues that the Alabama death penalty constitutes cruel and unusual punishment, and is thus unconstitutional. He proposes this argument even though he concedes that the "highest courts in the land" have upheld Alabama's death penalty law. We agree that the great weight of authority supports Alabama's death penalty law. Further, it is unnecessary for this court to address this issue. In the instant case, the appellant was not sentenced to death. Instead, he was sentenced to life imprisonment without parole. The issue regarding the constitutionality of Alabama's death penalty law is moot. This court has held previously that moot points are not subject to review. Evans v. State,389 So.2d 567, 572-573 (Ala.Crim.App. 1989); Hammond v.State, 354 So.2d 280, 284 (Ala.Crim.App. 1977),cert. quashed, Hammond v. State, 354 So.2d 294 (Ala. 1977), cert. denied, Hammond v. Alabama, 439 U.S. 823,99 S.Ct. 91, 58 L.Ed.2d 115 (1978).
AFFIRMED.
All the Judges concur.